| | |
|---|---|
| DAVID DEATON (S.B. # 205713) <br> ddeaton@omm.com <br> STEPHEN M. SULLIVAN (S.B. # 245314) <br> ssullivan@omm.com <br> CAITLIN M. BAIR (S.B. # 256994) <br> cbair@omm.com <br> DIMITRI D. PORTNOI (S.B. # 282871) <br> dportnoi@omm.com <br> KYLE M. GROSSMAN (S.B. # 313952) <br> kgrossman@omm.com <br> ELIZABETH A. ARIAS (S.B. # 318283) <br> earias@omm.com <br> O'MELVENY & MYERS LLP <br> Two Embarcadero Center <br> San Francisco, California 94111 <br> Telephone: (415) 984-8700 <br> Facsimile: (415) 984-8701 | K. LEE BLALACK, II (admitted *pro hac vice*) <br> lblalack@omm.com <br> O'MELVENY & MYERS LLP <br> 1625 Eye Street, N.W. <br> Washington, D.C. 20006 <br> Telephone: (202) 383-5300 <br> Facsimile: (202) 383-5414 |

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. RONDA OSINEK, <br><br> Plaintiff, <br><br> v. <br><br> KAISER PERMANENTE, et al., <br><br> Defendants. | Case No. 3:13-cv-03891-EMC <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' JOINT ADMINISTRATIVE MOTION TO AMEND THE CASE MANAGEMENT ORDER** <br><br> Judge: Hon. Edward M. Chen <br> Courtroom: 5, 17th Floor |

(CAPTION CONTINUED)

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. GLORYANNE BRYANT and VICTORIA HERNANDEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>KAISER PERMANENTE, et al.,<br><br>        Defendants. | Case No. 3:18-cv-01347-EMC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' JOINT ADMINISTRATIVE MOTION TO AMEND THE CASE MANAGEMENT ORDER**<br><br>Judge:         Hon. Edward M. Chen<br>Courtroom:  5, 17th Floor |
| UNITED STATES OF AMERICA ex rel. JAMES M. TAYLOR,<br><br>        Plaintiff,<br><br>    v.<br><br>KAISER PERMANENTE, et al.,<br><br>        Defendants. | Case No. 3:21-cv-03894-EMC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' JOINT ADMINISTRATIVE MOTION TO AMEND THE CASE MANAGEMENT ORDER**<br><br>Judge:         Hon. Edward M. Chen<br>Courtroom:  5, 17th Floor |

## I. INTRODUCTION

After an eight-year pre-intervention investigation and two years of litigation discovery, Defendants have produced nearly ***three million documents***, over a terabyte of data, more than 750 pages of interrogatory responses, and a comprehensive privilege log.  Blalack Decl. ¶¶ 11, 70.  The United States, for its part, has produced just over 63,000 documents, sparse and often nonresponsive answers to Defendants' interrogatories, and a privilege log that withholds thousands of documents based on facially noncompliant claims of deliberative-process privilege.  *Id.* ¶¶ 11, 66, 69.  While the United States and Relators (collectively, "Plaintiffs") complain in their Joint Administrative Motion ("Motion") about the pace of Defendants' discovery responses, it is notable that they never once had occasion to seek the Court's assistance to compel compliance with any of their requests.  *Id.* ¶ 11.  Unfortunately, Defendants did not receive the same cooperation.  The United States' conduct in discovery has resulted in innumerable delays and required Defendants to file three motions to compel before Magistrate Judge Spero, who went so far as to call the United States' objections to one motion "totally inappropriate."  *Id.* ¶¶ 11, 29.

The United States' dilatory discovery practices are most pronounced in its refusal to fully respond to three interrogatories asking it to disclose the most basic factual information about its case—the identification of the specific allegedly false claims for payment at issue and the disclosure of the facts that allegedly show why those claims are false.  Indeed, despite a decade of investigation and litigation, the United States has thus far identified ***only 19*** allegedly false claims for payment, 16 of which were alleged in the original complaint filed in 2021.  The United States is delaying this litigation because it persistently refuses to commit to a definitive deadline to disclose this most essential factual information about its allegations against Defendants.

Notwithstanding this obstruction, Defendants negotiated in good faith with Plaintiffs regarding their requested extension of the case-management schedule.  Defendants advised Plaintiffs that they would consent to a substantial extension of the discovery schedule and other deadlines but only if the United States agreed to a firm deadline to respond to these three interrogatories at least five months before the close of fact discovery—a relatively modest request given that Defendants served the interrogatories in January 2022.  Without that firm deadline,

1  Defendants cannot conduct the necessary factual investigation and discovery to defend
2  themselves against the allegedly false claims.  When the parties could not reach agreement on
3  such a deadline, Plaintiffs filed this Motion proposing a new schedule that omits a deadline for
4  such interrogatory responses.  Defendants respectfully ask the Court to deny the Motion and enter
5  the alternative schedule they propose here, which includes a hard deadline for these interrogatory
6  responses and other minor adjustments to the schedule Plaintiffs proposed.  In the alternative, the
7  Court should deny the Motion outright, and the parties should proceed to summary judgment or
8  trial on the 19 allegedly false claims that the United States has identified in discovery.

**II.    BACKGROUND**

The crux of the parties' dispute over a potential extension relates to the timing of the United States' response to Kaiser Foundation Health Plan's Interrogatory Nos. 1, 2, and 4 (the "Interrogatories").[1]  These requests seek basic factual information about the allegedly false claims for payment at issue in this case, including an identification of the false claims, the reasons they are allegedly false, and the alleged damages caused to the United States by each such claim for payment.  *Id.* ¶ 12.  Defendants served these requests more than two years ago on January 28, 2022, the week fact discovery commenced.  *Id.*  The United States exhausted nearly 20 months, until August 2023, before it offered a fully satisfactory response related to the 19 allegedly false diagnosis codes it identified in response to Interrogatory Nos. 1 and 2.  *Id.* ¶¶ 13-18.  The United States identified the 19 codes, the associated date of service and medical records, the reason why each code was allegedly false, and the evidence purportedly supporting the alleged falsity of each code, including the physicians who recorded the diagnoses in the patients' medical records and communications with the physicians that are allegedly relevant to the patient encounters.  *Id.* ¶¶ 17-18.  **Appendix B** summarizes the factual allegations about these 19 disputed claims and shows that those allegations are varied and highly individualized.

---

[1] The Motion attempts to distract from this core issue by casting false aspersions on Defendants' discovery conduct.  The Blalack Declaration, and supporting exhibits, offers a thorough explanation of the parties' discovery efforts to correct the record.  But even a passing glance at the pace and volume of productions demonstrates the monumental efforts Defendants have taken to conduct discovery in good faith.  *See* **Appendix A** (chart comparing production statistics).

1   Defendants conducted a detailed investigation of each fact and document that the United
2   States identified in its responses, and then interviewed the healthcare providers who allegedly
3   recorded the false diagnoses in the medical records for each patient encounter. *Id.* ¶ 19. Pursuant
4   to Federal Rule of Civil Procedure 26, Defendants then disclosed each of those providers as
5   witnesses with knowledge on whom Defendants may rely to support their defenses. *Id.*

6   Defendants also notified the United States that, if it intended to put ***any*** additional
7   allegedly false diagnosis codes at issue, it must identify those codes at least five months before
8   the fact-discovery deadline given the detailed and individualized fact development that
9   Defendants must conduct on each allegedly false claim. *Id.* ¶¶ 113-15. The United States has had
10  diagnosis data in its possession since July 2021—before it intervened and filed its original
11  complaint—that would enable it to answer the Interrogatories, or at least request additional
12  information from Defendants permitting it to do so.[2] *Id.* ¶¶ 78-85. But the United States
13  responded that it would not fully answer the Interrogatories during fact discovery and would only
14  contemplate disclosing this essential information when it served its expert reports, long after
15  Defendants' opportunity to develop a record to rebut the allegations has passed. *Id.* ¶¶ 20, 112.

16  The parties engaged in months of good-faith negotiations about an extension of the case-
17  management schedule, but the parties could not agree on a firm deadline by which the United
18  States would ***fully and finally*** respond to the Interrogatories before the fact-discovery deadline.
19  *Id.* ¶¶ 108-56. Defendants did not consent to the Motion because they could not agree to an
20  extension, particularly of this length, without a definitive deadline for the United States to fully
21  and finally answer the Interrogatories well before the fact-discovery deadline.

22  **III.   ARGUMENT**

23  Defendants do not, in principle, oppose an appropriate extension to the case schedule. But
24  Plaintiffs' proposal is highly prejudicial to Defendants because it does not incorporate a firm
25  deadline for the United States to respond to the Interrogatories and fails to maintain staggered

---

[2] The United States waited until February 14, 2024, just 40 days before the close of fact discovery, to propound massive new document requests relating to over 2,300 patient encounters, and now complains about Defendants' estimate of the time needed to fully respond to those new requests. Mot. 3-4, 3 n.4. In paragraphs 140-52 of the Blalack Declaration, Defendants explain the basis of their estimate of the time needed to respond to these eleventh-hour requests.

briefing on *Daubert* and summary judgment motions. If the Court agrees that an extension is warranted, it should adopt Defendants' proposed alternative, attached as **Appendix C**, which differs from Plaintiffs' schedule in two material respects: ***first***, it incorporates a deadline for the United States to fully respond to the Interrogatories so that Defendants have five months before the close of fact discovery to conduct the needed fact development and discovery on the final list of allegedly false claims; and ***second***, it maintains the staggered briefing schedule on *Daubert* and summary judgment motions that is reflected in the Court's existing case-management order.

Plaintiffs provide no persuasive explanation for their failure to offer a firm deadline for final responses to the Interrogatories. Instead, they argue that Defendants inappropriately seek premature disclosure of "expert opinions." Mot. 5. That is patently untrue. The Interrogatories do not require disclosure of ***any*** expert witness or opinions. Interrogatory No. 1 asks that the United States identify the diagnosis codes it alleges are false, not any expert analysis. Blalack Decl. ¶ 12. Interrogatory No. 2 asks the United States to disclose—for each identified diagnosis code—the alleged basis of falsity and the ***facts*** that the United States asserts support its allegations. *See id.* Again, these Interrogatories seek the identification of facts only—indeed, of the ***exact same*** type of information that the United States has already provided with respect to the 19 allegedly false diagnosis codes it has identified. *See* **Appendix B**. And through Interrogatory No. 4, Defendants ask the United States to identify which of the allegedly false diagnosis codes will constitute the United States' sample for purposes of extrapolating liability and damages. Blalack Decl. ¶¶ 12, 135.[3] Nothing about these requests asks the United States to disclose any expert rationale for constructing a sample or the expert's conclusions. *Id.*; *see Amgen Inc. v. Sandoz Inc.*, 2017 WL 1352052, at *2 (N.D. Cal. Apr. 13, 2017) (interrogatories proper "to the extent they seek only facts, not how an expert would construe those facts").

Defendants cannot overstate the importance of obtaining responses to the Interrogatories well before the fact-discovery deadline. The United States has accused Defendants of a wide-

---

[3] Defendants steadfastly maintain—as they have throughout this litigation, *see id.* ¶ 135 n.5—that neither statistical sampling nor extrapolation is proper to prove liability or damages here. *See, e.g., United States v. Vista Hospice Care, Inc.*, 2016 WL 3449833, at *13 (N.D. Tex. June 20, 2016). Defendants insist that Plaintiffs present individualized proof of each allegedly false claim.

1  ranging scheme that allegedly defrauded the Medicare Advantage program of hundreds of
2  millions of dollars before trebling.  Dkt. 140, U.S. Am. Compl. ¶ 13.  Defendants must know the
3  *specific* claims for payment at issue and why the United States contends they are false in order to
4  investigate those allegations and marshal a defense.  By proposing a case schedule that does not
5  afford any time—much less sufficient time—for these discovery efforts, Plaintiffs seek to deprive
6  Defendants of their due process right to contest the evidence against them.

7  Courts have routinely required the United States in False Claims Act cases to respond to
8  interrogatories seeking identifying information about allegedly false claims before the close of
9  fact discovery.  *See United States ex rel. Poehling v. United Health Grp.*, No. 16-cv-8697-FMO-
10 SS, Dkt. 400 at 1 (C.D. Cal. June 8, 2020) (ordering United States to respond to interrogatories
11 asking it to identify "every diagnosis code" that it alleged a health plan defendant "improperly
12 failed to delete" approximately six months before close of fact discovery); *id.*, Dkt. 399 at 2
13 (showing case schedule in *Poehling*); *United States ex rel. Fesenmaier v. Cameron-Ehlen Grp.,*
14 *Inc.*, 2019 WL 3245003, at *1-2 (D. Minn. July 19, 2019) (similar); *see id.*, No. 13-cv-3003, Dkt.
15 203 at 5-6 (D. Minn. Apr. 2, 2019) (similar).  This Court, too, has required parties to respond to
16 similar interrogatories before the close of fact discovery in other contexts.  *See Cnty. of Santa*
17 *Clara v. Astra USA, Inc.*, 2009 WL 2868428, at *2-3 (N.D. Cal. Dec. 2, 2009) (Chen, J.)
18 (compelling response to interrogatories requesting plaintiff to identify each alleged overcharge
19 "and the basis for the claim that there was an overcharge" where the case had been ongoing for
20 years and discovery was set to close in less than two months).

21 The Court also should reject Plaintiffs' proposed overlapping briefing schedule on
22 *Daubert* and summary judgment motions.  The current schedule staggers the deadlines, which
23 will result in a more orderly briefing process.  Defendants' proposal maintains a staggered
24 briefing schedule, resulting in a trial date only two months after the date proposed by Plaintiffs.

25 **IV.   CONCLUSION**
26 The Court should deny the Motion and instead adopt Defendants' proposed schedule; in
27 the alternative, the Court should deny the Motion in its entirety.

28

| | | |
|---|---|---|
| 1 | Dated:  March 5, 2024 | Respectfully submitted, |

By:  /s/ *K. Lee Blalack, II*
K. LEE BLALACK, II
DAVID DEATON
STEPHEN M. SULLIVAN
CAITLIN M. BAIR
DIMITRI D. PORTNOI
KYLE M. GROSSMAN
ELIZABETH A. ARIAS

*Attorneys for Defendants*