December 20, 2024

**VIA ECF**

The Honorable Joseph C. Spero
Chief Magistrate Judge
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

Re:   *United States ex rel. Osinek v. Kaiser Permanente, et al.*, No. 3:13-cv-03891-EMC

Dear Judge Spero:

      Plaintiff the United States seeks the Court's assistance to resolve a dispute concerning the Court's August 1, 2024 Order (the "Order"). ECF No. 347. The parties have repeatedly conferred in good faith but have reached an impasse.

**The United States' Position.** The Order established a four-step process to resolve the parties' dispute regarding the production and identification of original medical records. This process was supposed to end with a stipulated original record for each encounter to use as evidence with witnesses and the jury. Hearing Tr., ECF No. 350, at 15:21-23 ("[T]he end of this should be a stipulation -- be attached to the original progress notes."). Kaiser, however, has failed to comply with Step Three of the Court's Order by refusing to enter into the required stipulation.

      The Order put the initial burden of identification on the United States, but then required Kaiser to review the United States' Step Two identifications and confirm if they were correct. *See* Hearing Tr. at 12:18-21 ("[C]ome up and say, this is what we understand to be the original record and we're going to prove up, we agree to put in front of the jury as the original record, and get them to disagree."). As described below, the United States spent considerable time and effort to identify and reproduce what it believes to be the original note for nearly 2,000 Kaiser records. Now, however, Kaiser will not stipulate whether the United States' identifications are correct. Kaiser is attempting to have it both ways—having previously refused to produce the standalone original medical records based on burden, Kaiser is now trying to prevent the United States from using the Step Two documents as evidence, even when they correctly identify the original note.

      Under Step Two, the United States was required to review each medical record for which Kaiser did not produce a standalone original under Step One and "identify the portions of those notes that it believes to be original progress notes." Order at 2. The Court instructed the United States to "go through, line by line, all 2000 that are leftover . . . and highlight, or however you're going to do it, and say, this is what we understand to be the original encounter, do you agree?" Hearing Tr. at 8:8-12. Accordingly, the United States went line-by-line through nearly 2,000 records previously produced by Kaiser and identified what it believes are the original progress notes for each. The United States then reproduced the pages from Kaisers' records containing the original notes. If a page with the original note contained other information, such as amendments,

1

the United States visibly redacted that information. Exhibit 1 shows what the United States produced under Step Two for one visit. Exhibit 2 is the medical record originally produced by Kaiser for this visit. We also left unredacted basic identifying information, such as the encounter date and patient name, which exists in the original medical record. *See, e.g.*, Ex. 3.

Next, under Step Three, Kaiser was required to review the United States' identifications and "either stipulate that they are correct or produce stand-alone documents containing only the original progress notes." Order at 2. Kaiser produced standalone originals for 196 encounters, and therefore was required under Step Three to stipulate that the remaining 1,779 "are correct." *See Id.* The United States followed the Court's instructions and proposed a stipulation with a list of the "documents provided by the United States pursuant to step two of the Order that the parties stipulate correctly identify the original progress notes." Ex. 4 (U.S. original proposed stipulation) ¶ 4. Kaiser rejected this stipulation and refused to stipulate that *any* of the United States' Step Two designations are correct. Instead, for these records, Kaiser will stipulate only that the original records appear within certain Bates numbers.

Kaiser argues that it should not have to review or stipulate to the documents the United States produced under Step Two because they are "demonstratives" that were "created" by the United States. Indeed, Kaiser makes clear it is "reserv[ing] all rights to seek appropriate relief with respect to the documents created by Plaintiff" in its proposed stipulation. Ex. 5 (Kaiser's proposal) ¶ 4. The United States' Step Two identifications, however, are not documents created by the United States; they are portions of records *created and produced by Kaiser* that contain what the United States believes to be the original progress notes. *See* Order at 2 (directing United States to "identify the portions of [Kaisers'] notes that it believes to be original progress notes"). Kaiser's claim that "Plaintiff did not identify the original progress notes *in Defendants' medical records* as contemplated by the order," *infra* at 3, is simply not true. And entering into a stipulation with respect to these documents is what the Court intended and what is required. Hearing Tr. at 14:12-13 ("You should do a stipulation as to those records, because then you can put in front of the jury [without] a dispute . . . .").

Kaiser's other reason for refusing to stipulate to any of the Step Two documents is that Kaiser claims it would have to check every word of every record to make sure the United States did not make any other alterations. This argument is meritless. The United States produced back to Kaiser the relevant portions from Kaiser's own records. We represented to Kaiser exactly what we did. We also offered to include a statement in our stipulation that Kaiser has relied on our representations. *See* Ex. 6 (U.S. amended proposed stipulation) ¶ 5. Kaiser rejected this, too.

Kaiser refuses to engage with the line-by-line review conducted by the United States at the Court's instruction and seeks to leave the parties with a mere list of Bates numbers ripe for future disputes. *See* Ex. 5. We have provided numerous examples to Kaiser showing why its proposal is contrary to the Order and unusable, given that Kaiser's records often contain the original note and subsequently addended information on the same page. *See* Ex. 7 (U.S. Nov. 25, 2024 Ltr.) at 3. The Court's four-step process was supposed to save the trial court from having to waste "five days jury time authenticating" each original note. Hearing Tr. at 16:2-3. The United States' stipulation—through which the parties would agree on the *exact* contents of the original note—accomplishes this goal. Kaiser's general identification of page ranges does not.

Exhibits 1 and 2 demonstrate the flaws in Kaiser's proposed stipulation. Under the United States' proposed stipulation, the parties would stipulate that Exhibit 1 correctly identifies the original note for the May 8, 2012, encounter with Dr. Bains (assuming Kaiser agrees it does). Under Kaiser's proposed stipulation, the parties would stipulate that the original note is found somewhere between KP-10045514 and KP-10045515. As Exhibit 2 (the full record) reveals, there are three different progress notes within this page range. There is also a list of diagnoses and lab information. Moreover, the page range includes multiple references to a diagnosis (atherosclerosis of aorta) that the United States contends was added after the visit through Kaiser's scheme. In other instances, the United States identified multiple notes that it believes together constitute the original. *See, e.g.*, Ex. 3. But Kaiser won't say whether the United States' designation is correct, providing only page ranges that encompass both. By not agreeing that Exhibit 1, 3, or any of the United States' Step Two designations are correct, Kaiser ignores the Order, and as a result, there is no agreed-upon original note to present to witnesses or the jury.

Kaiser claims it is clear from the records where the original progress notes start and end, but it is not always clear. That is presumably why, for 196 of the original notes the United States tried to identify, Kaiser took the position that the United States had done so incorrectly and produced originals. If the remaining 1,779 records are as clear as Kaiser claims, then Kaiser should simply stipulate that the United States' designation are correct, as required by the Order. And if the United States' designation are incorrect, then Kaiser should produce the original.

The United States spent significant time and effort going line-by-line through Kaiser's records to identify what it believes to be the original. We strongly disagree with Kaiser's claim that our review was "sloppy" or "mangled." *Infra* at 3-4. Kaiser's examples largely reveal minor disagreements (such as whether to include the version number of the note) that have nothing to do with the actual contents of the original. In any event, the Court's Order sets forth the process for resolving instances in which Kaiser disagrees with the United States' identification of the original progress note: Kaiser must produce the standalone original note. Yet rather than follow the Court's direction, Kaiser is trying to use instances of purported disagreement as a basis for it to *both* refuse to produce standalone original records and decline to stipulate as to the contents of those records. Kaiser cannot have it both ways and should be required to follow the Order.

**Defendants' Position.** The Order was intended to address Plaintiff's purported concerns that original progress notes were missing from or indiscernible in Defendants' medical record productions. It is now ***undisputed*** that Defendants have produced every responsive original progress note. Defendants have either produced standalone original progress notes or agreed to stipulate to the location of the notes in all of the relevant medical records. The ***only dispute*** before the Court is how to ***memorialize*** the parties' agreement and whether that agreement must include a stipulation adopting documents that are not the business records of any party and that contain redactions that were applied inconsistently and sloppily.

Under Step Two of the Order, by October 15, Plaintiff was supposed to review the medical records Defendants produced and "identify the portions of those notes that it believes to be original progress notes" or identify the medical records for which "it is unable to discern" the location of the notes. Plaintiff did not identify the original progress notes *in Defendants' medical records* as contemplated by the Order. Instead, on October 15 and October 16, Plaintiff

3

produced 1,975 demonstratives that it described as *copies of excerpts* of the produced medical records, *modified with various redactions*. Plaintiff told Defendants that these demonstratives "contain[] the portions of the medical records produced by Kaiser that the United States believes to be the original progress notes" and asked Defendants to stipulate that these demonstratives "are the originals." Ex. 10 at 1. Plaintiff identified **no** medical records for which it could not discern the location of the original progress notes as permitted by Step Two of the Order. *Id*.

Pursuant to Step Three, Defendants analyzed Plaintiff's demonstratives to confirm that Plaintiff had correctly identified the original progress notes in Defendants' medical records. On November 15, Defendants produced standalone original progress notes for 196 medical records in which Plaintiff failed to identify the correct pages for the notes in its demonstratives. For the remaining 1,779 records, Plaintiffs identified the correct pages of the original progress notes but Defendants could not simply adopt wholesale the demonstratives because Plaintiff mangled the copying and redaction of many medical records.[1] Accordingly, Defendants agreed "to stipulate that the treating providers' original progress notes begin and end on the pages designated with the beginning and ending Bates numbers identified in Attachment A, which correspond to the beginning and ending Bates numbers Plaintiff identified in its demonstratives for the associated medical records that Defendants produced to Plaintiff." Ex. 11 at 1-2.

Plaintiff rejected Defendants' proffered stipulation, insisting that Defendants stipulate that "documents provided by the United States" contained the original progress notes. Ex. 6 at 2. Plaintiff argued that stipulating to its demonstratives is the only way to avoid hypothetical future disputes regarding where the original progress notes start and end on the pages identified in the stipulation. Ex. 7 at 2-3.[2] Plaintiff asserts *supra* at 2 that it "provided numerous examples to Kaiser showing why its proposal is contrary to the Order and unusable." While Plaintiff identified examples of medical records that include *multiple progress notes*, it cited **no** examples in which Plaintiff could not discern the location of the original progress note in the record or about which Plaintiff was confused *in any way*.

The medical record reflected in Plaintiff's Exhibits 1 and 2 shows that there is no possibility for good-faith disputes about the location of the original progress notes under Defendants' proposed stipulation. The medical record produced by Defendants includes two notes by the treating provider: one from May 18, 2012 and another one from October 11, 2012. Ex. 2 at 2-3. There is also a very short note by a medical assistant. *Id*. at 2. Defendants agreed to stipulate that Plaintiff correctly identified the beginning and ending pages for the treating healthcare provider's original progress note at KP-10045514 to KP-10045515. Ex. 9 at 30, line 16. There is **only one** progress note spanning those two pages of the medical record. Consistent with Defendants' proposed stipulation and the pages identified in Plaintiff's demonstrative, the

---

[1] *E.g.*, *compare* Ex. 14 at 1 (Plaintiff's demonstrative) *with* Ex. 15 at 1-2 (Defendant medical record); Ex. 16 at 1 (Plaintiff's demonstrative) *with* Ex. 17 at 5 (Defendant medical record); Ex. 18 at 2 (Plaintiff's demonstrative) *with* Ex. 19 at 3 (Defendant medical record) (showing that, when copying and redacting the records, Plaintiff cut off parts of headers or signatures); *compare also* Ex. 20 at 1 (Plaintiff's demonstrative) *with* Ex. 21 at 1 (Defendant medical record) and Ex. 22 at 1 (Plaintiff's demonstrative) *with* Ex. 23 at 1 (Defendant medical record) and Ex. 24 at 1 (Plaintiff's demonstrative) *with* Ex. 25 at 1-4 (Defendant medical record) (all showing Plaintiff's inconsistent copy and paste of random sections with patient, facility, and "level of service" information).

[2] Plaintiff also falsely asserts that Defendants are trying to prevent the United States from using the demonstratives at trial. In fact, Defendants stated the exact opposite during the December 4 meet-and-confer.

original progress note starts on KP-10045514 with a header identifying it as such and ends on KP-10045515 with the provider's signature.  *See* Ex. 1 at 1-2; Ex. 2 at 2-3.  Plaintiff cannot credibly assert—and has not asserted—that it is unable to distinguish this original progress note from the separate note by the medical assistant or the separate note by the treating provider five months later.  Plaintiff's Exhibit 3 is similar: there is only one progress note spanning all the pages in Defendants' proposed stipulation.  *See* Ex. 3 at 1-3; Ex. 9 at 42, line 14; Ex. 8 at 1-3.  Plaintiff may choose to include additional notes drafted after the originals in its demonstratives.  But there is no confusion—or basis for confusion—regarding the location of the ***original progress note*** in this medical record.

Defendants proposed multiple offers of compromise to address Plaintiff's purported concerns.  **First,** Defendants asked Plaintiff to identify any medical records for which it was confused about where the original progress notes start and end.  Defendants agreed to clarify any such confusion ***and include that clarifying information in the stipulation***.  Ex. 12 at 10.  **Second,** Defendants proposed a stipulation that paired the specific pages in Defendants' medical records identifying the original progress notes with the specific pages in Plaintiff's demonstratives identifying those same pages.  Ex. 9 at 3.  **Finally,** Defendants offered to add to the proposed stipulation a statement that all of the original progress notes start with a header and end with the healthcare provider's signature and/or a section break.  Ex. 5 at 1.  Plaintiff rejected these compromises even though Plaintiff has never identified a single medical record for which it is actually confused about where an original progress note starts and ends in the record.

Because the parties agree on where the original progress notes are located in every medical record, Plaintiff's proposed stipulation is unwarranted.  The Court ordered the parties to identify the original progress notes in Defendants' medical records, *see* Order at 2, and did not contemplate the parties stipulating to demonstratives.  In fact, during the August 1 hearing, Defendants raised the following prospect: "[I]f Plaintiff cannot identify the original progress note, and let's say we've already produced it, I think part of that process would be to point them to where we think it exists, rather than to reproduce the note."  Ex. 13 at 15.  The Court responded, "that's fine," and noted that the parties would simply have to stipulate to the location of the note in the medical record.  *Id*.  This is ***exactly*** what Defendants have proposed.  Identifying all of Plaintiff's many copy and redaction mistakes would impose a tremendous cost and burden on Defendants for no practical reason.  Defendants' personnel would have to devote countless hours to flyspecking the demonstratives to ensure that they perfectly match the medical records produced by Defendants.  And, if they did not, Defendants would have to incur the burden of reproducing standalone original progress notes that duplicate the records already produced to Plaintiff, even though all parties agree where those notes are located in the medical records already produced by Defendants.  But the Order imposes no such burden on Defendants; in fact, the Court said that Defendants may not even have to review all of Plaintiff's designations: "You're going to go back through and check every single one of those, ***or some sampling of them***, to see whether you disagree."  Ex. 13 at 10 (emphasis added).  Defendants performed a more thorough and extensive review than the minimum allowed by the Court and offered a compliant stipulation encompassing *all of the medical records*—not just a sampling.

The Court should order Plaintiff to adopt Defendants' proposed stipulation, which is attached as Exhibit 5.  This stipulation fully complies with the letter and spirit of the Order.

Sincerely,

| UNITED STATES OF AMERICA | O'MELVENY & MYERS LLP |
|---|---|
| /s/ *Laurie A. Oberembt* | /s/ *K. Lee Blalack, II* |

Laurie A. Oberembt, Esq.
laurie.oberembt@usdoj.gov
Braden Civins, Esq.
braden.civins2@usdoj.gov
Arthur S. Di Dio
arhtur.di.dio@usdoj.gov
Gary R. Dyal, Esq.
gary.r.dyal@usdoj.gov
Michael Fishman, Esq.
michael.fishman@usdoj.gov
Rachel C. Karpoff, Esq.
rachel.c.karpoff@usdoj.gov
Jonathan T. Thrope, Esq.
jonathan.t.thrope@usdoj.gov
United States Department of Justice
Civil Division
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044

David M. DeVito, Esq.
david.devito@usdoj.gov
Assistant United States Attorney
450 Golden Gate Avenue
San Francisco, CA 94102
Phone: (415) 436-7200
Facsimile: (415) 436-6748

David Moskowitz, Esq.
david.moskowitz@usdoj.gov
Special Attorney to the U.S. Attorney General
1801 California Street
#1600
Denver, CO 80202

*Attorneys for the United States of America*

K. Lee Blalack, II, Esq.
lblalack@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Phone: (202) 383-5300
Facsimile: (202) 383-5414

David Deaton, Esq.
ddeaton@omm.com
Stephen M. Sullivan, Esq.
ssullivan@omm.com
Caitlin M. Bair, Esq.
cbair@omm.com
Dimitri Portnoi, Esq.
dportnoi@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, California 94111
Phone: (415) 984-8700
Facsimile: (415) 984-8701

*Attorneys for Defendants*