1  BRETT A. SHUMATE
   Assistant Attorney General
2
3  CRAIG H. MISSAKIAN (CABN 125202)
   United States Attorney
4  PAMELA T. JOHANN (CABN 145558)
   Chief, Civil Division
5
6  MICHELLE LO (NYBN 4325163)
   Assistant United States Attorney
7       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
8       Telephone: (415) 436-7200
        Facsimile: (415) 436-6748
9       Michelle.Lo@usdoj.gov
10 JAMIE ANN YAVELBERG
   EDWARD C. CROOKE
11 BRADEN CIVINS
   GARY R. DYAL
12 MICHAEL R. FISHMAN
   MARTHA N. GLOVER
13 SETH W. GREENE
   RACHEL C. KARPOFF
14 LAURIE A. OBEREMBT
   JONATHAN T. THROPE
15 United States Department of Justice
   Civil Division
16 Commercial Litigation Branch

17 *Counsel for the United States of America*

18              UNITED STATES DISTRICT COURT

19              NORTHERN DISTRICT OF CALIFORNIA

20              SAN FRANCISCO DIVISION

21 UNITED STATES OF AMERICA ex rel.     )  Case No. 3:13-cv-03891-EMC
                                        )
22 RONDA OSINEK,                        )  **UNITED STATES' OPPOSITION TO JEFFREY**
                                        )  **MAZIK'S MOTION FOR A SHARE OF**
23        Plaintiff,                    )  **SETTLEMENT PROCEEDS**
                                        )
24     v.                               )  Date:    April 2, 2026
                                        )  Time:    1:30 pm
25 KAISER PERMANENTE, et al.,           )  Place:   Courtroom 5
                                        )
26        Defendants.                   )  Hon. Edward M. Chen
                                        )
27 _____  )
                     (caption continued)
28

UNITED STATES' OPPOSITION TO MAZIK'S MOTION FOR A SHARE OF SETTLEMENT PROCEEDS
No. 3:13-cv-03891-EMC et al.

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. JAMES M. TAYLOR,<br><br>    Plaintiff,<br><br>    v.<br><br>KAISER PERMANENTE, INC., et al.,<br><br>    Defendants. | Case No. 3:21-cv-03894-EMC<br><br>**UNITED STATES' OPPOSITION TO JEFFREY MAZIK'S MOTION FOR A SHARE OF SETTLEMENT PROCEEDS** |
| UNITED STATES OF AMERICA ex rel. GLORYANNE BRYANT and VICTORIA HERNANDEZ,<br><br>    Plaintiffs,<br><br>    v.<br><br>KAISER PERMANENTE, et al.,<br><br>    Defendants. | Case No. 3:18-cv-01347-EMC<br><br>**UNITED STATES' OPPOSITION TO JEFFREY MAZIK'S MOTION FOR A SHARE OF SETTLEMENT PROCEEDS** |

1

**TABLE OF CONTENTS**

2    Table of Authorities…………………………………………………………………………… ii

3    I.     Procedural Background........................................................................................................1

4           A.     This Consolidated Action ..........................................................................................1

5           B.     Mazik's Action...........................................................................................................3

6    II.    Legal Background ...............................................................................................................6

7    III.   Argument ............................................................................................................................6

8    IV.    Conclusion ........................................................................................................................12

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

Cases                                                                                      Page(s)

3

*Ah Quin v. Cnty. of Kauai Dep't of Transp.*,

4
    733 F.3d 267 (9th Cir. 2013) ........................................................................... 10

5

*Barajas v. United States*,

6
    258 F.3d 1004 (9th Cir. 2001) ....................................................................... 9, 10

7

*In re Pharm. Indus. Average Wholesale Price*,
    892 F. Supp. 2d 341 (D. Mass. 2012) ........................................................... 10

8

*New Hampshire v. Maine*,

9
    532 U.S. 742 (2001) ........................................................................................ 10

10

*Rille v. PricewaterhouseCoopers LLP*,

11
    803 F.3d 368 (8th Cir. 2015) ......................................................................... 6, 8

12

*United States ex rel. Birchall v. SpineFrontier, Inc.*,
    No. CV 15-12877-LTS, 2024 WL 4686985 (D. Mass. Nov. 4, 2024) ........... 6, 8

13

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,

14
    342 F.3d 634 (6th Cir. 2003) ......................................................................... 6

15

*United States ex rel. Lujan v. Hughes Aircraft Co.*,

16
    243 F.3d 1181 (9th Cir. 2001) ....................................................................... 11

17

*United States ex rel. Osinek v. Permanente Med. Grp., Inc.*,
    601 F. Supp. 3d 536 (N.D. Cal. 2022) ........................................................... 4, 5

18

*United States v. Conyers*,

19
    108 F.4th 351 (5th Cir. 2024) ....................................................................... 6, 8

20

*United States v. Millenium Labs, Inc.*,

21
    923 F.3d 240 (1st Cir. 2019) ......................................................................... 10

22

*United States v. Van Dyck*,

23
    866 F.3d 1130 (9th Cir. 2017) ....................................................................... 10

24

**Statutes**

25

31 U.S.C. § 3730(b)(2) ..................................................................................... 6

26

31 U.S.C. § 3730(c)(5) ...................................................................................... 6

27

31 U.S.C. § 3730(b)(5) ..................................................................................... 4

28

The United States opposes Jeffrey Mazik's eleventh-hour attempt to extract $44.5 million from a settlement of claims he did not make. In April 2024, Mazik opposed the transfer of his *qui tam* action in the Eastern District of California to this Court, arguing that his case "tackles completely different factual issues, and . . . asserts legal claims unrelated to the *Osinek* cases," and therefore would be "simply unaffected" by the outcome of this litigation. *Mazik* ECF No. 114 at 15–16.[1] But now, when Kaiser has agreed to pay $556 million to settle the *Osinek* action, Mazik argues that the two cases involve the "same fraud scheme" and "s[eek] remedies for the same injuries." *See* Motion for a Share of Settlement Proceeds ("Mot.") at 1, 12, Dkt. No. 439 at 8, 19. The two schemes are not the same: the United States' claims concerned false diagnoses added to patient records via addenda by doctors working for Kaiser, whereas Mazik's claims allege that Kaiser disabled fraud-detection software used to detect inaccurate diagnoses in records by "outside providers" who did not work for Kaiser. Mazik's flip-flop is patently opportunistic, and his newfound position is meritless. The Court should deny his motion.

## I.    Procedural Background

### A.    This Consolidated Action

This consolidated action originally consisted of six *qui tam* actions, the first of which was filed by Relator Ronda Osinek on August 22, 2013. Dkt. No. 1. Relator James Taylor, M.D. filed the second action in the District of Colorado on October 22, 2014. In 2021, the *Taylor* action was transferred to this district and consolidated with the *Osinek* action as well as four other *qui tam* actions: *United States ex rel. Arefi v. Kaiser Found. Health Plan, Inc.*, No. 3:16-cv-01558 (filed Sept. 4, 2015 in the Central District of California ("C.D. Cal.") and transferred to this district in 2016); *United States ex rel. Stein v. Kaiser Found. Health Plan, Inc.*, No. No. 3:16-cv-05337 (filed May 16, 2016 in C.D. Cal. and transferred to this district that same year); *United States ex rel. Bryant and Hernandez v. Kaiser Permanente*, No. 3:18-cv-1347 (filed March 1, 2018 in this district); and *United States ex rel. Bicocca v. Permanente Medical Group*, No. 3:21-cv-03124 (filed Feb. 10, 2020 in the Eastern District of California ("E.D. Cal.") and transferred to this district in 2021) (collectively, the "Consolidated Action"). *See* Dkt.

---

[1] "*Mazik* ECF No." refers to filings in Mazik's action, *United States ex rel. Mazik v. Kaiser Found. Health Plan, et al.*, 2:19-cv-00559-DAD (E.D. Cal.), and "Dkt. No." refers to filings in this consolidated action.

No. 171 at 10, 28.[2]

On July 27, 2021, the United States intervened as to all claims that Defendants "submitted, or caused to be submitted, for risk-adjustment payments based on diagnoses improperly added via addenda" under Medicare Advantage starting in 2009 and declined to intervene as to all other claims in the Consolidated Action.  Dkt. No. 65 at 4.  On October 25, 2021, the United States filed its Complaint-in-Intervention against Kaiser Foundation Health Plan, Inc.; Kaiser Foundation Health Plan of Colorado; The Permanente Medical Group, Inc. ("TPMG"); Southern California Permanente Group ("SCPMG"); and the Colorado Permanente Medical Group, P.C. ("CPMG").  Dkt. No. 110.  Following this Court's decision granting in part and denying in part Kaiser's motion to dismiss the United States' Complaint, the United States filed an Amended Complaint-in-Intervention in December 2022 ("Amended Complaint").  Dkt. Nos. 223, 240.

The Amended Complaint alleged that from 2009 to 2018, Kaiser conducted a scheme to increase its Medicare Advantage reimbursements by pressuring medical providers employed by Kaiser to add diagnoses after patient visits through "addenda" to patients' medical records, which were then submitted to the Centers for Medicare & Medicaid Services ("CMS") for risk adjustment reimbursement.  Dkt. No. 240 ¶¶ 105–125, 201–233, 364–376.  The United States alleged that Kaiser developed various mechanisms to mine a patient's past medical history for potential diagnoses that had not been submitted to CMS for risk adjustment.  *Id.* ¶¶ 126–200.  Kaiser then sent "queries" to its providers urging them to add these diagnoses to medical records via addenda, often months and sometimes over a year after visits. *Id.* ¶¶ 201–233.  As alleged by the United States, there were many instances where the diagnoses added by the providers had nothing to do with the patient visit in question, in violation of CMS requirements, or the addended diagnosis was for a condition that was contradicted by the patients' medical records. *See, e.g.*, *id.* ¶¶ 364–376.  Kaiser's integrated structure—through which it employs and had access to the records of thousands of providers—enabled the alleged scheme.  *See, e.g.*, *id.* ¶¶ 30–33, 111–112.

On January 14, 2026, the United States, Relators Osinek and Taylor, and Kaiser executed a

---

[2] In an order addressing the first-to-file bar, this Court partially dismissed the *Taylor* and *Bryant and Hernandez* False Claims Act actions and dismissed the *Arefi*, *Stein*, and *Bicocca* actions. Dkt. No. 171 at 38–46.

settlement agreement pursuant to which Kaiser agreed to pay the United States $556 million, and the United States and Relators released Kaiser for certain "Covered Conduct," defined to include only the conduct alleged in the United States' Amended Complaint.  Dkt. No. 441 at 9, 10.  The settlement agreement specifically reserved and did not release any liability to the United States for any conduct other than the Covered Conduct.  *Id.* at 10–11.  In connection with the settlement, the United States agreed to pay a relator share of $95,000,000.  *Id.* at 24.

### B.    Mazik's Action

Mazik filed his *qui tam* action in E.D. Cal. on April 1, 2019.  *Mazik* ECF No. 1.  On December 1, 2021, the United States declined to intervene in his action.  *Mazik* ECF No. 62.  On March 26, 2024, Mazik filed a Second Amended Complaint, which is the operative complaint in his action.  *Mazik* ECF No. 107.  The case remains pending before the Honorable Dale A. Drozd.

Mazik alleges that defendants Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, Inc., and The Permanente Medical Groups violated the False Claims Act ("FCA") by knowingly accepting false claims from non-Kaiser physicians and submitting those claims to CMS for risk adjustment reimbursement.  *See id.* ¶¶ 2–3, 6, 45–50, 73–76, 89, 101.  According to Mazik, Kaiser disabled fraud-detection software which would have identified false claims from these outside providers.  *Id.* ¶¶ 41–74, 57–63.  Mazik's alleged scheme is limited to claims submitted to CMS from non-Kaiser providers.  *See, e.g.*, *id.* at 18 (section entitled "Defendants allow false claims *by outside providers* in order to artificially inflate per capita payments by Medicare and Medicaid." (all emphases are added unless otherwise noted)).

In July 2022, Kaiser moved to dismiss Mazik's First Amended Complaint, *Mazik* ECF No. 48, based on the FCA's first-to-file rule, which prohibits any person "other than the Government" from "interven[ing] or bring[ing] a related action based on the facts underlying the pending action."  *See Mazik* ECF No. 78; 31 U.S.C. § 3730(b)(5).  Kaiser argued that Mazik's FCA claims overlapped with Relator James Taylor's earlier filed action, and that Taylor made the same claims as Mazik.  *Mazik* ECF No. 78 at 14–17.

In opposition, Mazik stated that his claims were "materially distinct" from any other pending action and should not be barred, since they focused "almost exclusively on Kaiser's defunct compliance

operations, including but not limited to its intentional manipulation of fraud detection software…" *Mazik* ECF No. 85 at 11. Mazik acknowledged that "the 'nature of wrongdoing' alleged [in his action] is quite different from that alleged in Taylor, or any other previous *qui tam* action against Kaiser." *Id.* at 12.

In a February 13, 2024 order, Judge Drozd granted Kaiser's motion in part, finding that Mazik's FCA claim was barred by the first-to-file rule "except to the extent [Mazik] allege[d] that defendants deliberately tampered with compliance software to ensure that it did not identify erroneous diagnosis codes." *Mazik* ECF No. 104 at 12. The order stated that because the "the nature of the wrongdoing" alleged by Mazik regarding the defendants' tampering with fraud detection software "involve[d] different material elements from" *Taylor's* action, that specific allegation was not barred. *Id.* at 13 (citing *United States ex rel. Osinek v. Permanente Med. Grp., Inc.*, 601 F. Supp. 3d 536, 552 (N.D. Cal. 2022)). The order further barred Mazik's FCA claim "insofar as it alleges a general fraudulent scheme wherein defendants knowingly requested CMS reimbursements premised on erroneous diagnosis codes." *Mazik* ECF No. 104 at 13.

On April 8, 2024, Kaiser moved to transfer Mazik's action to this district. *Mazik* ECF No. 109. Mazik opposed the motion, arguing that his action was "separate and distinct" from this consolidated action. *Mazik* ECF No. 114 at 5. Specifically, Mazik argued that:

- "Each action focuses on different factual mechanisms of fraud and different sets of relevant documents and witnesses." *Id.*

- "[T]he factual basis for proving Mazik's claim is not present in the consolidated cases. . . . [W]hile the United States in *Osinek* will focus on proof that Kaiser providers added false diagnostic codes in addenda after patient encounters, Mazik will focus on a different compliance system and database, to show Kaiser tampered with it to allow fraudulent claims by non-Kaiser providers." *Id.* at 14.

- "[B]ecause Mazik's legal claims are distinct from the claims asserted in *Osinek*, there is effectively no possibility of inconsistent rulings between the two cases." *Id.*

- "Whether Kaiser is responsible for false claims caused by its tampering with compliance software for detecting fraudulent claims by outside providers would be a determination

that is simply unaffected by a different judicial determination that Kaiser physicians did or did not use false diagnosis codes to record patient encounters." *Id.* at 15.

- "[T]his case is unlike the Northern District cases. It tackles completely different factual issues, and it asserts legal claims unrelated to the *Osinek* cases." *Id.* at 16.

The United States filed a Statement of Interest that opposed Kaiser's transfer motion.[3]  Like Mazik, the United States argued that the case should not be transferred because of the significant differences between Mazik's claims and those already before this Court.  *See., e.g.*, *Mazik* ECF No. 111 at 7 ("Factually, this case is not in common with the Northern District cases. While all of the cases involve Kaiser's participation in Medicare Advantage, the similarity stops there."); *id*. ("[T]he Northern District cases have nothing to do with Kaiser's alleged tampering with compliance software.  Indeed, the only reason Mazik's claims survived the first-to-file analysis is because they were factually distinct from the claims in the Northern District cases."):

> On June 13, 2024, Judge Drozd denied the motion to transfer.  *Mazik* ECF No. 122.  The order noted that the "FCA claim in *Mazik* is predicated on defendants' alleged tampering with compliance software, while the FCA claims in the *Osinek* matters is almost entirely predicated on defendants' providers allegedly adding false diagnostic codes in addenda after patient encounters."  *Id.* at 16.  The order further noted that because of the court's prior first-to-file order, Mazik was only permitted to proceed on the factually distinct software misuse claim:As defendants argue and relator does not contest, there are some high-level similarities between *Mazik* and the *Osinek* matters. Both involve defendants' alleged violations of the federal FCA via incorrect diagnoses and deficient compliance programs. But, because of defendants' prior motion to dismiss on first-to-file grounds, relator's federal FCA claim survives only to the extent that it does not share a material factual basis with the *Osinek* matters. As the court discussed in its prior order, nothing in the *Osinek* matters deals with defendants' intentional misuse of its own compliance software, which is the sole remaining basis of relator's federal FCA claim in this case.

*Id.* at 17.

Mazik continues to litigate his surviving FCA claim against Kaiser in E.D. Cal.  Fact discovery is set to conclude on April 15, 2026, and a jury trial is scheduled to commence on April 26, 2028.  *Mazik* ECF No. 127 at 2.

---

[3] In his instant motion, Mazik states that the United States "vigorously opposed" Kaiser's transfer motion.  Mot. at 31.  He fails to mention that he also opposed transferring the case to this district.

1    **II.    Legal Background**

2         When a relator files a *qui tam* action, the United States may elect to intervene and "proceed

3    with" the action.  31 U.S.C. § 3730(b)(2).  Alternatively, the United States may elect to proceed with the

4    relator's "claim" "through any alternate remedy available to the Government, including any

5    administrative proceeding to determine a civil money penalty."  31 U.S.C. § 3730(c)(5).  In those

6    situations, the relator has "the same rights" they would have had if the United States had intervened, *id*.,

7    including the right to potentially share in "the proceeds of the action or settlement of the claim," *id.*

8    § 3730(d)(1).

9         Because a relator's right to recover under the FCA is "limited to a share of the settlement of the

10   claim that they brought," a relator who seeks a share of a government settlement under the alternate

11   remedy provision must establish that the settlement resolved "'the claim' brought by the relator."  *See*

12   *Rille v. PricewaterhouseCoopers LLP*, 803 F.3d 368, 372–73 (8th Cir. 2015) (*en banc*) ("A relator is not

13   entitled to a share of the proceeds derived from a non-overlapping claim . . . ."); *see also United States*

14   *ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 648 (6th Cir. 2003) (under the plain language of

15   § 3730(c)(5), a relator is entitled to an alternative remedy when "the government pursues *the relator's*

16   *claims* through any means alternative to intervening in the *qui tam* action"); *United States v. Conyers*,

17   108 F.4th 351, 358–59 (5th Cir. 2024) (allowing a relator "to recover only insofar as the settled claim

18   'overlaps' with the relator's claim . . . ensure[s] that the claim for which recovery is sought is one that

19   the relator [him]self actually brought to the government's attention").  To meet this standard, a relator

20   "must specifically, and with particularity, allege the fraud, the mechanism, the essential facts, and the

21   conduct giving rise to the claim settled by the government."  *United States ex rel. Birchall v.*

22   *SpineFrontier, Inc.*, No. CV 15-12877-LTS, 2024 WL 4686985, at *5 (D. Mass. Nov. 4, 2024).

23   **III.    Argument**

24        Mazik contends that the United States' settlement is an alternate remedy to his FCA suit because

25   the United States' claims addressed "the same fraud scheme," *see* Mot. at 8, and "sought remedies for

26   the same injuries identified in Mazik's claims," *id.* at 19.  This argument is meritless because the

27   respective complaints allege unrelated fraudulent schemes encompassing distinct, non-overlapping sets

28   of false claims for risk adjustment payments.

1    In the *Osinek* action, the United States alleged that Kaiser pressured its own providers—that is,

2  providers employed by Kaiser—to use addenda to add improper diagnoses to patients' medical records,

3  often months or even years after the visit.  In contrast, Mazik alleged that Kaiser tampered with

4  compliance software in a manner that "allow[ed] external, i.e., '*non-Kaiser*,' healthcare providers to

5  submit false diagnosis codes" and evade detection.  *See Mazik* ECF No. 104 at 4.  Mazik made this

6  distinction explicit in his complaint.  While recognizing that Kaiser members "receive a majority of their

7  care from 'in-network' providers at Kaiser Foundation Hospitals and regional Permanente Medical

8  Groups," *see Mazik* ECF No. 107 ¶ 46, Mazik repeatedly emphasized that the scheme he alleged

9  involved "Kaiser knowingly accept[ing] false claims from *non-Kaiser physicians.*" *Id*. ¶ 2; *see also id.*

10  ¶ 4 ("Kaiser accomplishes this fraudulent scheme by knowingly allowing false and fraudulent diagnosis

11  codes submitted in claims for payment by non-Kaiser providers ('outside providers').");  *id.* at 18

12  (section entitled "Defendants allow false claims *by outside providers* in order to artificially inflate per

13  capita payments by Medicare and Medicaid.").

14    Throughout his litigation, Mazik has repeatedly and vigorously underscored the distinctions

15  between his allegations and the United States' claims in the Consolidated Action.  When Kaiser moved

16  to dismiss his complaint on first-to-file grounds, Mazik argued that his claims were distinguishable from

17  those brought by prior relators because only his related to "purposefully configuring [software]

18  programs to overlook readily identifiable instances of fraud, waste and abuse from external providers."

19  *See Mazik* ECF No. 85 at 13.  And when Kaiser sought to transfer his case to this Court, Mazik similarly

20  argued that "[e]ach action focuses on different factual mechanisms of fraud and different sets of relevant

21  documents and witnesses."  *Mazik* ECF No. 114 at 5.  "[T]he United States in *Osinek* will focus on proof

22  that Kaiser providers added false diagnostic codes in addenda after patient encounters," *id.* at 14.  His

23  case, however, "focus[ed] on a different compliance system and database, to show Kaiser tampered with

24  it to allow fraudulent claims by non-Kaiser providers."  *Id.*  And because his claims were "distinct from

25  the claims asserted in *Osinek*," Mazik argued, "there [was] effectively no possibility of inconsistent

26  rulings between the two cases."  *Id.* at 10; *see also id.* at 11 ("Whether Kaiser is responsible for false

27  claims caused by its tampering with compliance software for detecting fraudulent claims by outside

28  providers would be a determination that is simply unaffected by a different judicial determination that

1    Kaiser physicians did or did not use false diagnosis codes to record patient encounters.").  Judge Drozd

2    agreed with Mazik when denying the motion to transfer, noting that Mazik's case "d[id] not share a

3    material factual basis with the *Osinek* matters."  *Mazik* ECF No. 122 at 17; *see also id.* ("As the court

4    discussed in its prior order, nothing in the *Osinek* matters deals with defendants' intentional misuse of its

5    own compliance software, which is the sole remaining basis of relator's federal FCA claim in this

6    case").

7             These fundamental differences between Mazik's claims and those brought by the United States

8    are fatal to Mazik's motion.  To recover a share of the United States' settlement under the FCA's

9    alternate remedy provision, Mazik must demonstrate that "the claim for which [he seeks] recovery . . . is

10   one that [he] actually brought to the government's attention."  *See Conyers*, 108 F.4th at 359.  He must

11   have alleged "the fraud, the mechanism, the essential facts, and the conduct giving rise to the claim[s]

12   settled by the government."  *See SpineFrontier*, 2024 WL 4686985, at *5; *see also Rille*, 803 F.3d at 373

13   ("A relator is not entitled to a share of the proceeds derived from a non-overlapping claim . . . .").

14   Mazik does not come close to meeting this standard.  As Mazik has repeatedly argued, his complaint

15   alleges a different fraud, perpetrated by different individuals, affecting different submissions to CMS.

16   *See, e.g.*, *Mazik* ECF No. 114 at 5 (representing that his case "focuses on different factual mechanisms

17   of fraud").  As Mazik previously recognized, his allegations regarding Kaiser tampering with software

18   for analyzing external provider claims data implicate none of the same conduct or essential facts as the

19   scheme through which Kaiser pressured its own providers to add improper diagnoses to the records of

20   past patient visits.

21             Faced with the fundamental differences between his claims and those resolved by the United

22   States, Mazik's motion resorts to mischaracterization and obfuscation.  Mazik insinuates that, because

23   the United States' Amended Complaint (filed in December 2022) contained more detail than its initial

24   Complaint (filed October 2021), the software tampering allegations must have been "crucial" and

25   "necessary" to the United States' additional allegations.  *See* Mot. at 20.  But Mazik cannot identify any

26   connection between his allegations and the United States' amendments.  The software with which Kaiser

27   allegedly tampered appears nowhere in the United States' Amended Complaint and had nothing to do

28   with its claims.  Rather, as Mazik previously argued, that software assessed the diagnoses in claims data

1   submitted by "non-Kaiser providers" whereas the United States' claims involved "Kaiser providers

2   [who] added false diagnostic codes in addenda." *See Mazik* ECF No. 114 at 14.

3          Similarly, Mazik's representation that Kaiser's "deactivation of the fraud detection tools" hid the

4   same fraud alleged by the United States, such that "without Mr. Mazik's filings and disclosures the

5   United States would have been unable to articulate the [fraudulent scheme] alleged in its amended

6   complaint-in-intervention," is baseless. *See* Mot. at 25. Again, Mazik alleges that Kaiser deactivated

7   software to avoid detecting unsupported diagnoses in claims data submitted by outside providers. That

8   scheme is unrelated to—and certainly did not "hide"—the separate scheme through which Kaiser

9   affirmatively pressured its own providers to add improper diagnoses to past patient records. *See id.*

10         Finally, Mazik is wrong that the United States' settlement "encompass[es] the same remedy

11  sought in Mr. Mazik's *qui tam* action" and that he is therefore "effectively barr[ed] from pursuing" his

12  claims. *See id.* at 28. Mazik was right before, when he acknowledged that the United States' "distinct"

13  legal and factual basis means that his case is "simply unaffected" by the United States' resolution of its

14  lawsuit. *See Mazik* ECF No. 114 at 10–11; *see also* Dkt. No. 441 at 9–11 (limiting release in settlement

15  agreement to conduct alleged in the United States' Amended Complaint). The allegedly false claims for

16  reimbursement encompassed by the two cases do not overlap. Medicare Advantage risk adjustment

17  submissions are based on diagnoses from particular patient visits. *See, e.g.*, Dkt. No. 240 ¶ 82 (citing

18  Medicare Managed Care Manual Requirement that "diagnosis codes . . . must be documented as a result

19  of a face-to-face visit"). Whereas the United States' settlement addressed only diagnoses added to the

20  records of patients' visits with Kaiser providers, Mazik's claims concern only diagnoses submitted to

21  Kaiser following visits with external providers. Mazik's ability to pursue his software tampering claims

22  and recover the separate and distinct damages remains unchanged.

23         Because his claims are distinct from those settled by the United States, the cases Mazik cites do

24  not help him. To the contrary, each supports the principle that the alternate remedy provision entitles a

25  relator to a recovery only to the extent the relator's claims overlap with those the government pursued in

26  an alternative proceeding. *See Barajas v. United States*, 258 F.3d 1004, 1012 (9th Cir. 2001) (holding

27  that the alternate remedy provision applied where relator had brought a *qui tam* alleging "precisely the

28  same problem" covered by the government's separate suspension/debarment proceeding against the

same defendants); *In re Pharm. Indus. Average Wholesale Price*, 892 F. Supp. 2d 341, 344 (D. Mass. 2012) (finding an alternate remedy where United States "effectively settled" all of relator's claims in an alternate proceeding).[4]  Rather than raise "the same problem" as the United States' case, *see Barajas*, 258 F.3d at 1012, Mazik's Second Amended Complaint describes a separate scheme involving different facts and a distinct set of allegedly false claims for reimbursement.  The alternate remedy provision is inapplicable in such circumstances, and Mazik is not entitled to a share of the United States' recovery.

Even if some overlap existed between Mazik's claims and those resolved by the settlement agreement, he still would not be entitled to a share of the settlement.  Instead, he would be precluded under the first-to-file rule.  *See United States v. Millenium Labs, Inc.*, 923 F.3d 240, 252 (1st Cir. 2019) ("[O]nly the first-to-file relator can claim the relator's share of the settlement proceeds for each claim.").  Multiple prior *qui tams* filed years before Mazik's complaint gave the United States notice of the alleged addenda fraud scheme underlying the United States' action and resolved by the settlement agreement.  *See* Dkt. No. 171 at 6–8; 28–38 (summarizing Osinek and Taylor's *qui tam* actions).

Mazik asks the court to disregard any first-to-file issues his motion presents, claiming they are resolved by Judge Drozd's ruling that "Mr. Mazik's federal False Claims Act claims survived the first-to-file bar."  *See* Mot. at 30.  But Mazik cannot have it both ways.[5]  Judge Drozd's ruling rested squarely on the conclusion that Mazik's software tampering claims "involve[d] different 'material

---

[4] Mazik also cites to *United States v. Van Dyck*, but that decision does not hold anything relevant to his motion.  *See* 866 F.3d 1130 (9th Cir. 2017). Rather, the "sole issue" was "whether Relators [were] entitled to intervene in the criminal proceeding." *Id.* at 1135. The court explicitly did not reach the "alternate remedy" question and merely suggested that relators might be able to "assert[] in their qui tam action that they are entitled to a portion of the forfeited funds [from a criminal proceeding] to the extent that [a defendant] is entitled to a damage credit in [the qui tam] action." *Id.* at 1135 n.3. In any event, whether a relator might in some circumstances be able to recover a defendant's potential damages credit is irrelevant. As discussed above, since the material facts and claims for reimbursement in the United States' and Mazik's actions are distinct, and the settlement agreement does not release Kaiser for any conduct other than that alleged in the United States' Amended Complaint, there are no damages to credit in Mazik's action as a result of the settlement.

[5] Because Mazik's new-found position is meritless, the Court need not rely on the doctrine of judicial estoppel to deny his motion. However, the doctrine exists to prevent precisely such opportunistic changes in position. "[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation marks omitted). "[I]ts purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749–50 (citation and internal quotation marks omitted); *see also Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270 (9th Cir. 2013).

1  elements' from" previously filed *qui tams*.  *See Mazik* ECF No. 104 at 13; *see also Mazik* ECF No. 85 at

2  12 (arguing that "the 'nature of wrongdoing' alleged [in Mazik's own action] is quite different from that

3  alleged in Taylor, or any other previous qui tam action against Kaiser").  Having survived a first-to-file

4  challenge precisely because his claims are *different* from those filed by prior relators, Mazik cannot now

5  claim that he should share in the United States' settlement of the earlier relators' claims because he

6  actually alleged "the same fraud scheme."  *See* Mot. at 8; *see also id.* at 19 (arguing the cases involve

7  "the same causes of action . . . *i.e.*, the submission of monthly claims for capitated payments for

8  Medicare Advantage enrollees using falsely inflated [risk adjustment factors] based on invalid or

9  improper diagnoses codes"); *id.* at 26 ("[T]here are no two Kaiser frauds.").  To the contrary, Judge

10  Drozd has already found that the first-to-file bar prevents Mazik from taking this blatantly contradictory

11  position.  Judge Drozd's ruling made clear that Mazik's complaint is "barred insofar as it alleges a

12  general fraudulent scheme wherein defendants knowingly requested CMS reimbursements premised on

13  erroneous diagnosis codes."  *See Mazik* ECF No. 104 at 13; *see also Mazik* ECF No. 122 at 17

14  ("[B]ecause of defendants' prior motion to dismiss on first-to-file grounds, relator's federal FCA claim

15  survives only to the extent that it does not share a material factual basis with the *Osinek* matters.").

16  Mazik is not entitled to any share based on aspects of his claim that have been dismissed.  *See United*

17  *States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir. 2001) (holding that the

18  purpose of the first-to-file bar is "to promote incentives for whistle-blowing insiders" and "prevent[ing]

19  opportunistic successive plaintiffs").

20         In sum, Mazik's only surviving FCA claim does not overlap with the United States' Amended

21  Complaint, and the United States did not settle Mazik's claims.  Mazik is therefore not entitled to a share

22  of the United States' recovery under the FCA's alternate remedy provision.[6]

23

24

25

---

26  [6] Because Mazik is not entitled to any share of the United States' settlement, the Court need not analyze
    how he calculates the $44.5 million he claims to be owed.  Mazik's method for reaching this figure—
27  apparently, subtracting relators' share of the United States' intervened settlement from the share a
    hypothetical relator could have recovered if they reached the same settlement in a declined *qui tam*—is
28  arbitrary, and Mazik does not even try to justify it.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.    Conclusion**

For the foregoing reasons, the Court should deny Mazik's motion for a share of the settlement proceeds of this action.

DATED: March 11, 2026                         Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

CRAIG H. MISSAKIAN
United States Attorney

 */s/ Michelle Lo*
MICHELLE LO
Assistant United States Attorney

JAMIE ANN YAVELBERG
EDWARD C. CROOKE
BRADEN CIVINS
GARY R. DYAL
MICHAEL R. FISHMAN
MARTHA N. GLOVER
SETH W. GREENE
RACHEL C. KARPOFF
LAURIE A. OBEREMBT
JONATHAN T. THROPE
United States Department of Justice
Civil Division
Commercial Litigation Branch

*Counsel for the United States of America*